**DENTONS US LLP**
D. Farrington Yates
Marc H. Mandel
James A. Copeland
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

*Counsel for the Petitioner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 15 |
| COGENT FIBRE INC., | Case No. 15-_____ (___) |
| Debtor in a Foreign Proceeding. | Recognition Request Pending |

**VERIFIED PETITION FOR RECOGNITION OF CANADIAN**
**PROCEEDING UNDER CHAPTER 15 AND MOTION**
**FOR ORDER GRANTING RELATED RELIEF**

Cogent Fibre Inc. ("CFI" or the "Debtor"), in its capacity as the duly authorized foreign representative (in such capacity, the "Petitioner") in respect of that certain insolvency proceeding commenced pursuant to Canada's *Bankruptcy and Insolvency Act* (R.S.C. 1985, c. B-3) (the "BIA"), pending before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"), File No. 31-2016058 (the "Canadian Proceeding") concerning the Debtor, by and through its United States counsel, Dentons US LLP, respectfully submits this verified petition (the "Verified Petition") seeking the entry of the proposed order attached hereto as Exhibit A (the "Proposed Order") **(i)** recognizing the Canadian Proceeding as (a) a "foreign main proceeding" or, in the alternative, (b) a "foreign non-main proceeding" under sections 1502(4), 1502(5), 1515, and 1517 of title 11 of the United States Code (the "Bankruptcy Code"); **(ii)** recognizing the Petitioner as the "foreign representative" of the Debtor as defined in section

101(24) of the Bankruptcy Code; **(iii)** granting the Petitioner authority—pursuant to section 1521(a) of the Bankruptcy Code—to (a) examine witnesses, take evidence, and deliver information concerning the Debtor's assets, affairs, rights, obligations, and liabilities and (b) administer, realize, and distribute any and all of the Debtor's assets within the territorial jurisdiction of the United States; and **(iv)** granting such other and further relief as the Court deems just and proper.

In support of this Verified Petition, the Petitioner relies on the **(i)** *Declaration of Petitioner in Support of (I) Verified Petition for Recognition of Canadian Proceeding Under Chapter 15 and Motion for Order Granting Related Relief and (II) Motion for (I) Ex Parte Emergency Relief and (II) Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* (the "Petitioner Declaration"); **(ii)** *Declaration of Kenneth D. Kraft in Support of (I) Verified Petition for Recognition of Canadian Proceeding Under Chapter 15 and Motion for Order Granting Related Relief and (II) Motion for (I) Ex Parte Emergency Relief and (II) Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* (the "Kraft Declaration") and **(iii)** *Declaration of D. Farrington Yates in Support of (I) Verified Petition for Recognition of Canadian Proceeding Under Chapter 15 and Motion for Order Granting Related Relief and (II) Motion for (I) Ex Parte Emergency Relief and (II) Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* (the "Yates Declaration" collectively with the Petitioner Declaration and the Kraft Declaration, the "Declarations") filed concurrently herewith and incorporated as if fully set forth herein.  In addition to the Declarations and in further support of the Verified Petition, the Petitioner respectfully represents as follows.[1]

---

[1]   The Petitioner respectfully submits that this Verified Petition contains the relevant grounds and authorities in support of the relief sought therein and thus, satisfies Rule 9013-1(b) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"); alternatively, the Petitioner

17772977\V-3

## PRELIMINARY STATEMENT

The Debtor, headquartered in Toronto, Ontario, was once a thriving woodchip exporter; however, it could not escape the fallout from the 2008 financial crisis. During and after the crisis, there was a precipitous drop in customer demand for the Debtor's products. As demand fell and flat-lined, the Debtor struggled to generate sales sufficient to meet certain contractual quotas under its charter party agreements with certain ship owners. As a result, numerous disputes arose between the Debtor and the ship owners—NSU (as defined below) and NYK (as defined below). These disputes have proven costly. The Debtor believes that these disputes have cost it millions of dollars in lost earnings and have compromised the Debtor's standing in the shipping charter market thereby compounding its financial and operational issues. Further, these disputes have devolved into complex, expensive maritime arbitrations in New York. Plagued with decreased demand, costly litigations, and a tight shipping market, the Debtor chose to wind down its operations and resolve outstanding claims.

However, on July 14, 2015, after years of litigation, the District Court (as defined below) confirmed an US$11.6 million arbitration award issued against the Debtor and in NSU's favor. The Debtor believes that NSU will promptly seek to obtain a judgment and proceed to collection. In addition, NYK has commenced an arbitration proceeding against the Debtor seeking US$2.7 million in damages. The Debtor does not have sufficient funds or other assets to satisfy these claims. As a result, on July 15, 2015, the Debtor commenced insolvency proceedings in its home country—Canada. The Debtor believes that the BIA proposal process under Canadian insolvency law will best serve its goals to maximize the value of its remaining assets and achieve and equitable distribution of same. Consequently, the Debtor appointed the Petitioner to serve as

---

respectfully requests that compliance with Rule 9013-1(b) be waived. However, the Petitioner reserves the right to file a further memorandum of law to the extent the circumstances so require.

17772977\V-3

its duly authorized foreign representative for the purpose of filing this Verified Petition.  The

Petitioner believes that the Verified Petition and the relief sought in conjunction therewith will

ensure the orderly administration of the Canadian Proceeding for the benefit of all creditors and

will further enable the Debtor to efficiently and effective wind down its business.

### JURISDICTION, VENUE, AND ELIGIBILITY

1.      This Court has jurisdiction to consider this Petition pursuant to sections 157 and

1334 of title 28 of the United States Code and the Amended Standing Order of Reference

(Preska, C.J.) dated January 31, 2012.  This is a core proceeding pursuant to section 157(b)(2) of

title 28 of the United States Code.  *See* 28 U.S.C. § 157(b)(2)(P) ("Core proceedings include, but

are not limited to . . . recognition of foreign proceedings and other matters under chapter 15 of

title 11").

2.      Venue is proper in this Court pursuant to section 1410(1) of title 28 of the United

States Code, which provides that "[a] case under chapter 15 of title 11 may be commenced in the

district court of the United States for the district[] in which the debtor has its principal place of

business or principal assets in the United States."  The Debtor's only assets within the United

States are a deposit account held at Wells Fargo Bank in White Plains, New York  and an interest

in Dentons US LLP's client trust accounts in New York City, both of which are located within

this District.  (*See* Petitioner Decl. ¶26.)  The Debtor has no other assets or place of business

within the United States.  (*See id.*)  The Petitioner further submits that venue is proper pursuant

to section 1410(2) of title 28 of the United States Code as the Debtor is party to the Confirmation

Proceeding (defined herein) pending before Judge Paul A. Engelmayer in the United States

District Court for the Southern District of New York.[2]  *See* 28 U.S.C. § 1410(2) (providing that,

---

[2]      As set forth below, on July 14, 2015, the District Court (defined herein) issued an opinion and order confirming
the Arbitration Award (defined herein).  (Yates Decl. Ex. D.)  Although the Debtor has 30 days to file its

"if a debtor does not have a place of business or assets in the" U.S., it may commence a chapter 15 case in a district "in which there is pending against the debtor an action or proceeding in a Federal or State court"); (Petitioner Decl. ¶¶ 17-18.).

3.      Moreover, the presence of the above assets within the United States makes the Debtor eligible for relief under chapter 15 pursuant to section 109(a) of the Bankruptcy Code. *See* 11 U.S.C. § 109(a) ("only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title"); *see also In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 372-73 (Bankr. S.D.N.Y. 2014) (finding that retainer in possession of foreign representative's U.S. counsel satisfies the section 109(a) requirement); *In re Global Ocean Carriers Ltd.*, 251 B.R. 31, 39 (Bankr. D. Del. 2000) (finding that "bank accounts constitute property in the United States for purposes of eligibility under section 109 of the Bankruptcy Code, regardless of how much money was actually in them on the petition date.").

## **BACKGROUND**

**A.      The Debtor's Business, Corporate Structure, and Debt Structure**

4.      <u>The Debtor's Business</u>.  The Debtor, through its predecessor entities, was founded in 2005, but is now winding down its operations.  (Petitioner Decl. ¶¶5, 8.)  The Debtor marketed and exported pine woodchips from the eastern coast of the United States.  (*Id*. at ¶5.)  The Debtor's clients use woodchips to, among other things, manufacture particleboard and medium-density fiberboard as well as to generate clean, renewable energy at biomass-fired power plants. The Debtors procured woodchips from the necessary tree-thinning of certain private timberlands

---

appeal, on July 16, 2015, the District Court entered the Judgment (defined herein) and closed this case.  (*Id*. at Ex. E.)  The Debtor is evaluating the effect that the closing of the case may have with respect to its right to appeal.

in the southeastern U.S.   The Debtor was once the leading woodchip exporter on North America's eastern coast with clients in Austria, Italy, Turkey, and China.  (*Id.*)  The Debtor was the exclusive woodchip exporter for woodchip terminals in the eastern United States: the East Coast Terminals in Savannah, Georgia (the "Savannah Terminal") and The Port of Morehead City in Morehead City, North Carolina (the "Morehead Terminal" together with the Savannah Terminal, the "Export Terminals").  (*Id.* at ¶6.)   In addition to the Export Terminals, CFI indirectly sourced woodchips from an exclusive supplier out of South America through the Orinoco Wood Chips C.A. Edificio (a loading dock and storage facility) located on the Orinoco River in Punta de Piedra, Venezuela; however, the Debtor has since ended its relationship with its exclusive Venezuelan source.  (*Id.*)

5.      In addition, in May 2008, the Debtor entered into a long-term charter party contract (as amended, the "NSU Charter Party") with NS United Kaiun Kaisha, Ltd., a Japanese company ("NSU"), for the exclusive use of the maritime vessel the "Daishin Maru."  (*Id.* at ¶7.) In October 2007, the Debtor entered into a long-term charter party contract (as amended, the "NYK Charter Party") with Nippon Yusen Kaisha, Tokyo, a Japanese company ("NYK"), for the exclusive use of a maritime vessel "TBN" or "to be named" (together with the Daishin Maru, the "Vessels").  (*Id.*)   The Vessels were custom-designed to transport woodchips and woodchip pellets, which allowed the Debtor to maximize the economics of shipping woodchips and enjoy a substantial competitive advantage in its industry.  (*Id.*)

6.      Corporate Structure.  The Debtor is a privately held company and was originally organized as a Delaware limited liability company—Cogent Fibre, LLC.  (*Id.* at ¶9.)  However, in 2011 Cogent Fibre, LLC changed its name to "Cogent Fibre Inc." and federally incorporated

17772977\V-3

pursuant to the laws of Canada and extra-provincially registered in Ontario.[3] (*Id.*) The Debtor is the wholly owned subsidiary of Cogent Biomass, Inc. ("<u>Biomass</u>"), a holding company organized in Canada. Donald R. McClure and Robert M. Mantrop indirectly (through holding companies) hold a majority of Biomass's shares. (*Id.*)

       7.     Since its founding, the Debtor's primary management team and headquarters have been located at its registered place of business: 338 Davenport Road, Suite 102, Toronto, Ontario M5R 1K6 Canada (the "<u>Head Office</u>"). In addition to its Head Office in Toronto, the Debtor has "offices" in Stamford, Connecticut and Istanbul, Turkey. However, these "offices" are merely places where directors and/or independent contractors who worked with the Debtor lived or were physically located.

       8.     The Debtor has two directors: Donald R. McClure and Robert M. Mantrop. Both Mr. McClure and Mr. Mantrop are Canadian citizens and residents. (*Id.* at ¶10.) The Debtor does not have any employees; however, the Debtor hired two independent contractors to perform certain administrative and back-office functions. (*Id.*)

       9.     <u>Debt Structure</u>. Biomass—the Debtor's parent company—is the Debtor's sole source of financing. (*Id.* at ¶11.) Biomass funded the Debtor's operations, as needed, on a secured basis. (*Id.*)

---

[3]    The Debtor was reorganized under Canadian law in order to take advantage of a certain tax treaty by and between the United States and Canada. (*See* Petitioner Decl. ¶9 n. 3.)

### B.     The Arbitration

10.     <u>The NSU Dispute</u>.  During the performance of the NSU Charter Party, numerous disputes arose between the Debtor and NSU.  (*Id*. at ¶12.)  As a result, the NSU Charter Party was amended to adjust NSU's shipping rates.  (*Id*.)  After the parties negotiated the amendments, the Debtor continued to honor its obligations under the NSU Charter Party despite the fact that the "financial crisis" had resulted in severely depressed customer demand.  (*Id*.)

11.     In September 2011, NSU "dry docked"[4] the Daishin Maru without the Debtor's consent under the NSU Charter Party.  (*Id*. at ¶13.)  In October 2011, the Daishin Maru departed "dry dock" and NSU requested that the Debtor provide the next "consecutive cargo"[5] for the vessel.  However, at the time, the Debtor was reviewing its shipping program and could not commit to provide any cargo.  Rather, the Debtor requested that the parties adjust NSU's freight rates, as the parties had previously done on an annual basis after the 2008 financial crisis to allow for further performance under the NSU Charter Party.  In the meantime, the Debtor asked that NSU seek alternate employment to mitigate any damages.  Still, the Daishin Maru docked at the Debtor's loading port, but the Debtor could not provide any cargo without the requested adjustments to the NSU Charter Party.  NSU then "withdrew" the Daishin Maru from service and terminated the NSU Charter Party.  (*Id*.)

12.     After the termination of the NSU Charter Party, NSU chartered the Daishin Maru to the Debtor's competitors, Coretrade and Ecowood.  (*Id*. at ¶14.)  Coretrade had obtained woodchips from the Debtor's exclusive Venezuelan source.  Further, Coretrade chartered the

---

[4]   "Dry docking" means removing the ship from CFI's service and entering the ship into a shipyard where the ship would be removed from the sea, placed in dry docking area, and drained of sea water to allow for repairs to the ship.  (*Id*. at ¶13 n. 4.)

[5]   "Consecutive cargo" means that, when in service to the Debtor under the NSU Charter Party, cargo would be assigned to the Daishin Maru for loading after the prior cargo had been completely discharged and it was in route to the next loading port declared by the Debtor.  (*Id*. at ¶13 n. 4.)

17772977\V-3

Vessel in order to ship the woodchips to one of the Debtor's core customers in Turkey. Nevertheless, NSU permitted the Daishin Maru to make the shipment. The Debtor believes that this interference with its exclusive supply contract with its Venezuelan source and its interest in the Turkish customer causes substantial economic losses. (*Id.*)

13.    The Arbitration.    In February 2012, NSU commenced arbitration against the Debtor in New York (the "Arbitration"). (*Id.* at ¶15.) The parties appointed two arbitrators, who in turn, appointed a third arbitrator/chairman (the "Arbitration Panel" or the "Panel"). (*Id.*) NSU asserted a breach-of-contract claim in connection with the NSU Charter Party and sought damages in the amount of US$13,780,297. (*See id.* at ¶16.) The Debtor counterclaimed for breach of contract, economic advantage, and tortious interference with contract and sought damages in the amount of US$15,285,951. (*Id.*) On January 23, 2015, after three years of active litigation, 10 evidentiary hearings, multiple discovery disputes, substantial motion practice, and multiple rounds of briefing, the Arbitration Panel issued its findings. (*Id.*) The Panel issued an award in NSU's favor in the amount of US$11,606,421 (the "Arbitration Award"). (*Id.*)

14.    The Confirmation Proceeding.    In March 2015, NSU filed its *Petition to Recognize and Enforce Arbitration* [S.D.N.Y.; No. 15-cv-01784-PAE; D.I. 1] in the United States District Court for the Southern District of New York (the "District Court") seeking confirmation of the Arbitration Award (the "Confirmation Proceeding"). (*Id.* at ¶17.) The Debtor filed its opposition to NSU's petition and cross moved to vacate the Arbitration Award on the grounds that the Arbitration Panel exceeded its authority with respect to the quantum of damages awarded to NSU. (*Id.*) On July 14, 2015, the District Court issued that certain opinion and order confirming the full amount of the Arbitration Award and denying the Debtor's cross-motion to vacate [S.D.N.Y.; No. 15-cv-01784-PAE; D.I. 15] (the "Confirmation Order"). (*Id.* at

¶18; Yates Decl. Ex. D.)  Although CFI has 30 days from entry of the Confirmation Order to file its appeal, on July 16, 2015, the District Court entered a judgment (the "Judgment") and closed the Confirmation Proceeding.  (Yates Decl. Ex. E.)  The Debtor believes that NSU will expeditiously seek to record the Judgment and proceed with collection actions.  (Petitioner Decl. ¶¶18, 28.)

### C.    Events Leading to the Debtor's Insolvency

15.    During and after the financial crisis, demand for the Debtor's products among its core customers steadily receded.  (*Id.* at ¶19.)  Due to depressed demand for its products, the Debtor necessarily shipped less product, which meant less "cargoes" for the Vessels.  As a result, disputes arose between the Debtor and the Vessel owners—NSU and NYK.  The ship owners then restricted the Debtor's access to the Vessels and impaired its ability to meet already depressed customer demand.  Indeed, the Debtor believes that its disputes with NSU resulted in a loss of at least US$15.3 million in earnings.  In addition, in 2012, NSU commenced the Arbitration seeking damages of US$13.7 million in connection with the Debtor's alleged breaches of the NSU Charter Party.  (*Id.*)  In January 2015, the Arbitration Panel issued the Arbitration Award in NSU's favor, which has since been confirmed by the District Court.  (*Id.* at ¶¶ 18-19)  Then, NYK asserted claims against the Debtor in the amount of US$2.7 million in connection with the Debtor's alleged failure to ship a certain minimum amount of product.  (*Id.* at ¶19.)  In December 2014, NYK commenced an arbitration proceeding against the Debtor in New York.  (*Id.*)  The Debtor has engaged in settlement discussions with NYK, however, the parties have not yet been able to resolve their disputes.  (*Id.*)

16.    These disputes compromised the Debtor's standing in the shipping market, which constrained its ability to charter vessels to deliver its product.  (*Id.* at ¶20.)  Under the weight of declining demand, a complex maritime arbitration, various shipping disputes, and a hostile

-10-

charter market, the Debtor's management exercised its reasonable business judgment to wind down the Debtor's business. (*Id.*)

**D.    The Canadian Proceeding**

17.    On July 15, 2015, the Debtor commenced the Canadian Proceeding by filing a *Notice of Intention to Make a Proposal* (the "NOI") pursuant to section 69 of the BIA. (*Id.* at ¶21; Yates Decl. Ex. B.)  The Canadian Court entered an Order (the "BIA Order"), among other things, **(i)** appointing the Debtor as its own duly authorized foreign representative[6] and **(ii)** authorizing the Petitioner to file the Verified Petition in this Court. (Petitioner Decl. ¶21; Yates Decl. Ex. C.)  In addition, the Fuller Landau Group Inc. will serve as the Debtor's proposal trustee (the "Proposal Trustee"), an independent court officer that monitors and reports on the Debtor's affairs after the NOI has been filed. (Petitioner Decl. ¶21; Kraft Decl. ¶¶6-7)  The Canadian Proceeding will allow the Debtor to take advantage of the BIA's proposal process, which the Debtor believes is the most efficient, cost-effective insolvency proceeding available under Canadian law and thus, should result in greater distributions to its creditors.

18.    The BIA proposal process is a collective, streamlined insolvency proceeding wherein the Debtor—under the Canadian Court's supervision—will attempt to address its liabilities by agreement. (*See* Kraft Decl. ¶¶3-16.)  Like the Bankruptcy Code, upon the filing of the NOI, the BIA automatically imposed a broad stay of proceedings against the Debtor and its property as well as its officers and directors in order to promote the orderly administration of the Canadian Proceeding and to preserve the value of the Debtor's remaining assets, protect creditors' interests therein, and establish a centralized forum to address creditors' claims. (*See*

---

[6]    On July 15, 2015, the Debtor's board of directors passed a resolution appointing the Petitioner as its foreign representative. (Petitioner Decl. ¶21 n. 7; Yates Decl. Ex. A.)  Under Canadian law, the Debtor is permitted—through its board of directors—to authorize itself to serve as a foreign representative and administer its assets and affairs during the course of an insolvency proceeding.  Therefore, the Petitioner is the functional equivalent of a debtor-in-possession under the Bankruptcy Code. (*See* Kraft Decl. ¶5.)

*generally* Petitioner Decl. ¶22; Kraft Decl. ¶5.)  Under the BIA, the Debtor's proposal must be

negotiated and agreed to by creditors as the BIA does not allow courts to approve proposals over

the objection of an unsecured creditor class that has not accepted the proposal.  (*See* Petitioner

Decl. ¶22; Kraft Decl. ¶15.)   The BIA proposal process must result in a creditor-approved

proposal, or the Debtor will be liquidated under the BIA's liquidation provisions.  (*See* Petitioner

Decl. ¶22; Kraft Decl. ¶16.)

19.     To facilitate the Canadian Proceeding and the Debtor's proposal process, the

Petitioner respectfully requests that the Court enter the Proposed Order granting the relief set

forth below.

## RELIEF REQUESTED

20.     The Petitioner respectfully requests that this Court enter an order, substantially in

the form of the attached Proposed Order,

**(i)** recognizing the Canadian Proceeding as (a) a "foreign main proceeding" or, in the

alternative, (b) a "foreign non-main proceeding" under sections 1502(4), 1502(5), 1515, and

1517 of the Bankruptcy Code;

**(ii)** recognizing the Petitioner as the "foreign representative" of the Debtor as defined in

section 101(24) of the Bankruptcy Code;

**(iii)** granting the Petitioner authority—pursuant to section 1521(a) of the Bankruptcy

Code—to (a) examine witnesses, take evidence, and deliver information concerning the Debtor's

assets, affairs, rights, obligations, and liabilities and (b) administer, realize, and distribute any

and all of the Debtor's assets within the territorial jurisdiction of the United States; and

**(iv)** granting such other and further relief as the Court deems just and proper.

In addition, the Petitioner may—to the extent it deems necessary—return to this Court to seek

17772977\V-3

recognition or enforcement of any orders entered by the Canadian Court in connection with the Canadian Proceeding or any other relief available to the Petitioner under chapter 15 of the Bankruptcy Code.

## BASES FOR RELIEF

21.     Chapter 15 of the Bankruptcy Code applies where assistance is sought in a United States court by a foreign representative.  11 U.S.C. § 1501(b)(1).  The stated objectives of chapter 15 include: (i) cooperation between United States courts and foreign courts in cross-border insolvency cases, (ii) "legal certainty for trade and investment," (iii) protection of all interested parties in a cross-border insolvency, and (iv) "maximization of the value of the debtor's assets."  11 U.S.C. § 1501(a); *see In re Oversight & Control Comm'n. of Avánzit, S.A.*, 385 B.R. 525, 534 (Bankr. S.D.N.Y. 2008).  The Petitioner respectfully submits that each of these goals can best be achieved by recognizing that Ontario, Canada is the Debtor's center of main interests and thus, that the Canadian Proceeding is a foreign main proceeding.

### A.     The Canadian Proceeding is a "Foreign Main Proceeding"

22.     Section 1517(a) of the Bankruptcy Code provides that, after a notice and hearing, a court will enter an order recognizing a "foreign proceeding" as a "foreign main proceeding" if **(i)** such proceeding falls within the definition of a "foreign main proceeding" pursuant to section 1502(4) of the Bankruptcy Code; **(ii)** "the foreign representative applying for recognition is a person or body;" and **(iii)** the chapter 15 petition satisfies the requirements set forth in section 1515 of the Bankruptcy Code. *See Oversight*, 385 B.R. at 532.

23.     Under section 1502(4) of the Bankruptcy Code, a "foreign main proceeding" is (i) a foreign proceeding (ii) "pending in the country where the debtor has the center of its main interests" (hereinafter, "COMI").  Indeed, under section 1517(b)(1), courts recognize a foreign proceeding as a "foreign main proceeding" if it is pending in a country where the debtor has its

-13-

COMI.  As discussed in greater detail below, the Canadian Proceeding is a "foreign proceeding" pending in the Debtor's COMI—Ontario, Canada.  Thus, pursuant to section 1517(b)(1) of the Bankruptcy Code, the Canadian Proceeding should be recognized as a "foreign main proceeding."

       **1.**       **The Canadian Proceeding is a "Foreign Proceeding"**

      24.      Under the Bankruptcy Code, a "foreign proceeding" means

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).  The Bankruptcy Code defines a "foreign court" as "a judicial or other authority competent to control or supervise a foreign proceeding."  11 U.S.C. § 1502(3).

      25.      Here, the Canadian Proceeding plainly qualifies as a "foreign proceeding" under the Bankruptcy Code.  First, the BIA's proposal process constitutes a collective insolvency proceeding whereby a debtor seeks to engage all creditors and stakeholders in order to consensually adjust its liabilities.  The BIA—like the Bankruptcy Code—imposes a broad stay to protect the Debtor, its assets, its creditors, and certain of its directors and officers in order to facilitate an orderly proposal process and encourage creditor participation in a centralized forum.  (*See* Petitioner Decl. ¶22; Kraft Decl. ¶5.)  Second, the Canadian Proceeding was commenced in a foreign country—Canada.  (Petitioner Decl. ¶21.)  Third, the Debtor's assets and affairs, through the BIA proposal process, are supervised by the Canadian Court with the aid of the Proposal Trustee.  (*See* Kraft Decl. ¶6-16.)  However, Canadian law permits a debtor or its board-appointment representative to continue to administer its assets and affairs during the course of a BIA proceeding, much like a debtor-in-possession under the Bankruptcy Code.  (*Id.* at ¶5.)  And fourth, the BIA promotes the rehabilitation of an insolvent company through the

-14-

proposal process; however, if the Debtor cannot reach an accord with creditors, the BIA provides

for the Debtor's bankruptcy and liquidation.  (*Id*. at ¶16.)  Furthermore, bankruptcy courts in the

U.S. routinely recognize BIA proceedings as "foreign proceedings" under chapter 15.  *See, e.g.,*

*In re Calmena Energy Servs. Inc., et al.*, Case No. 15-30786 (KKB) (Bankr. S.D. Tex. Mar. 5,

2015); *In re Talon Sys. Inc., et al.*, Case No. 13-11811 (KJC) (Bankr D. Del. Aug. 30, 2013); *In*

*re Wellpoint Sys., Inc., et al.*, Case No. 11-10423 (MFW) (Bankr. D. Del. Feb. 25, 2011); *In re*

*EarthRenew IP Holdings LLC, et al.*, Case No. 10-13363 (CSS) (Bankr. D. Del. Nov. 10, 2010);

*In re Innua Canada Ltd., et al.*, Case No. 09-16362 (DHS) (Bankr. D.N.J. Apr. 15, 2009); *In re*

*CPI Plastics Grp. Ltd.*, Case No. 09-20175 (JES) (Bankr. E.D. Wis. Feb. 10, 2009).

26.     Accordingly, the Petitioner respectfully submits that the Canadian Proceeding

should be recognized as a "foreign proceeding" under section 101(23) of the Bankruptcy Code.

**2.      The Debtor's COMI is Ontario, Canada**

27.     The Bankruptcy Code does not define COMI, though "in the absence of evidence

to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's

main interests." 11 U.S.C. § 1516(c).  The section 1516(c) presumption "permits and encourages

fast action in cases where speed may be essential."  *See In re Bear Stearns High-Grade*

*Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 128 (Bankr. S.D.N.Y. 2007) *aff'd*,

389 B.R. 325 (S.D.N.Y. 2008).   Here, the Debtor's Head Office is in Toronto, Ontario,

(Petitioner Decl. ¶¶9, 24.), and therefore, Canada is presumed to be the Debtor's COMI under

section 1516(c) of the Bankruptcy Code.  However, this presumption may be rebutted upon the

presentation of contrary evidence.  *See Bear Stearns*, 374 B.R. at 128.

28.     In the Second Circuit "COMI lies where the debtor conducts its regular business,

so that the place is ascertainable by third parties."  *Morning Mist Holdings Ltd. v. Krys (In re*

*Fairfield Sentry Ltd.)*, 714 F.3d 127, 130 (2d Cir. 2013).  To determine the Debtor's COMI,

courts in this District consult a nonexhaustive list of factors, including:

> the location of the debtor's headquarters; the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes.

*Fairfield Sentry*, 714 F.3d at 137; *see In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 336 (S.D.N.Y. 2008). "In addition, the court may consider the location of the debtor's 'nerve center,' including from where the debtor's activities are directed and controlled, in determining a debtor's COMI." *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 416 (Bankr. S.D.N.Y. 2014) (citation and quotations omitted). Courts may also consider "international sources of law . . . to underscore the importance of factors that indicate regularity and ascertainability." *Id.* Finally, the Debtor's COMI is determined as of the date that its chapter 15 petition is filed. *Fairfield Sentry*, 714 F.3d at 133-37.

29.    In this case, the Debtor's COMI is Ontario, Canada. Despite certain limited connections to the United States, Turkey, and other countries, the Debtor's "real seat" has always been Ontario. *See, e.g., In re Catalyst Paper Corp.*, Case No. 12-10221 (PJW) (Bankr. D. Del. Jan. 17, 2012) (Hr'g Tr. 28:14-20) [D.I. 92] (Walsh, J.: "Regarding the COMI issue, I've seen practically the same scenario at least on two other occasions in the last few years where the number and activity of the Canadian debtors outweighs the number and activity of the U.S. debtors, and where the shots that are called come out of Canada, not the United States. And I think it's a very conventional recognition that I'll approve."). Since the Debtor's founding, its Head Office has been located in Toronto, Ontario. The Debtor's directors—Donald R. McClure and Robert M. Mantrop—are Canadian citizens and residents. Mr. McClure and Mr. Mantrop are the Debtor's primary decision makers and manage, direct, and control the Debtor's affairs

-16-

from the Head Office.  Consequently, all material business and administrative decisions issue

from the Head Office, including, but not limited to, matters concerning corporate policy and

governance, business strategy, financing, hiring, and significant transactions.  (Petitioner Decl.

¶24.)  In addition, the following factors support a finding that Ontario, Canada as the Debtor's

COMI:

- the Debtor is federally incorporated under Canadian law and extra-provincially registered in Ontario;

- the Debtor's primary legal-services provider is based in Ontario;

- Biomass—the Debtor's parent company and sole source of financing—is organized under Canadian law and registered in Ontario;

- the Debtor's marketing materials identify it as an Canadian corporation;

- the Debtor's primary bank accounts are located in Ontario;

- the Debtor's books and records, including data and servers, are held in Ontario;

- the Debtor has conducted all of its board meetings in Ontario (at least twice each year, more if necessary); and

- the Debtor files its tax returns with, and pays tax on its profits to, the Canada Revenue Agency.

(*Id.*)

30.    In light of the above, that the Debtor's COMI is Ontario, Canada was inarguably

"ascertainable by third parties."  *See Fairfield Sentry*, 714 F.3d at 130.  Indeed, no other

jurisdiction has either the quantity or quality of contacts with the Debtor; thus, creditors could

reasonably anticipate that the Debtor would avail itself of Canadian law in the event of

insolvency.  Moreover, ***all*** of the Debtor's creditors are non-U.S. companies or entities, based

either in Canada or Japan.  (Petitioner Decl. ¶25.)  The Canadian Proceeding, therefore, is

-17-

pending in the Debtor's COMI—Ontario, Canada.  Accordingly, pursuant to sections 1502(4) and 1517(b)(1) of the Bankruptcy Code, the Canadian Proceeding should be recognized as a foreign main proceeding.

**B.     Alternatively, the Canadian Proceeding is a "Foreign Nonmain Proceeding"**

31.     In the event that the Court does not recognize the Canadian Proceeding as a foreign main proceeding, the Petitioner respectfully requests that same be recognized as "foreign nonmain proceeding" as defined in section 1502(5) of the Bankruptcy Code.  Pursuant to section 1517(b) of the Bankruptcy Code, a foreign proceeding will be recognized as a "foreign nonmain proceeding" if the debtor has an "establishment" in the foreign country where the proceeding is pending.  *See* 11 U.S.C. § 1517(b)(2).  An "establishment" means "any place of operations where the debtor carries out a nontransitory economic activity."  11 U.S.C. § 1502(2).

32.     As set forth above, the Debtor's Head Office and primary management team are based in Ontario, Canada.  The Debtor indisputably has an "establishment" in Canada and thus, the Canadian Proceeding may be recognized as a foreign nonmain proceeding.  (*See* Petitioner Decl. ¶¶9-10, 24.); *see also, e.g., In re Millennium Global Emerging Credit Master Fund Ltd.*, 458 B.R. 63 (Bankr. S.D.N.Y. 2011) *aff'd*, 474 B.R. 88 (S.D.N.Y. 2012) (noting that, at the very least, the debtors had an "establishment" in Bermuda where two of funds' three directors were located, and their bank account, custodian, and auditors were situated); *In re SPhinX, Ltd.*, 351 B.R. 103, 122 (Bankr. S.D.N.Y. 2006) *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007).

**C.     The Petitioner is a "Foreign Representative"**

33.     Section 1517(a) further requires that "the foreign representative applying for recognition [be] a person or body."  *See* 11 U.S.C. § 1517(a)(2).  Under the Bankruptcy Code, a "foreign representative" means

17772977\V-3

a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).  Thus, a "foreign representative" must be (i) a person or body that is (ii) authorized in a foreign proceeding to either (a) administer the reorganization or liquidation of a debtor's assets or affairs or (b) act as a representative of such proceeding.  *See Ad Hoc Grp. of Vitro Noteholders v. Vitro, S.A.B. de C.V. (In re Vitro, S.A.B. de C.V.)*, 470 B.R. 408, 412 (N.D. Tex.) *aff'd sub nom.* 701 F.3d 1031 (5th Cir. 2012).  Section 101(41) of the Bankruptcy Code defines a "person" to include individuals, partnerships, and corporations.  *See* 11 U.S.C. § 101(41).

34.    Here, the Petitioner is a corporation, duly appointed by the Debtor's board of directors and authorized by the Canadian Court to act as the Debtor's foreign representative, empowered to administer the Debtor's assets and affairs in the Canadian Proceeding[7] and to commence this chapter 15 case.  (*See* Petitioner Decl. ¶¶21, 22 n. 6; Yates Decl. Exs. A and C.) Under Canadian law, the Debtor is authorized—through its board of directors—to administer its assets and affairs in the context of a BIA proposal process; thus, the Petitioner is the functional equivalent of a debtor-in-possession under chapter 11.  (*See* Kraft Decl. ¶5.)[8]

35.    Accordingly, the Petitioner satisfies the requirements of sections 101(24) and 1517(a)(2) of the Bankruptcy Code.[9]  *See Vitro, S.A.B.*, 470 B.R. at 411-13 (finding that co-

---

[7]    As discussed above, the Canadian Proceeding constitutes a "foreign proceeding" pursuant to section 101(23) of the Bankruptcy Code.

[8]    As set forth in the Kraft Declaration, neither the filing of the NOI nor the appointment of the Proposal Trustee displaces the Debtor's management or board-appointed foreign representative.  (*See id.* at ¶6.)

[9]    Pursuant to section 1516(a) of the Bankruptcy Code, "[i]f the decision or certificate referred to in section 1515(b) indicates that . . . a person or body is a foreign representative, the court is entitled to so presume." Here, the Petitioner submitted the BIA Order (Yates Decl. Ex. C), which authorizes the Petitioner to serve as the Debtor's "foreign representative"; thus, the Court is entitled to presume that the Petitioner satisfies the requirements of sections 101(24) and 1517(a)(2) of the Bankruptcy Code.

17772977\V-3

foreign representatives appointed by the debtor's board in connection with a Mexican bankruptcy proceeding—which incorporates a concept similar to chapter 11's debtor-in-possession mechanism—were "foreign representatives" under the Bankruptcy Code although the Mexican court did not expressly approve or otherwise authorize their appointment).

**D.    The Verified Petition Was Properly Filed and Satisfies the Requirements of Section 1515 of the Bankruptcy Code**

36.    The final prerequisite to recognition under section 1517(a) is that the petition satisfies the procedural requirements of section 1515.  Section 1515 sets forth the requirements for an application for recognition under chapter 15: **(i)** the foreign representative must file a petition for recognition, *see* 11 U.S.C. § 1515(a); **(ii)** the petition for recognition must be accompanied by either (a) "a certified copy of the decision commencing [the] foreign proceeding and appointing the foreign representative," (b) "a certificate from the foreign court affirming the existence of [the] foreign proceeding and of the appointment of the foreign representative," *or* (c) if such evidence is unavailable, "any other evidence acceptable to the Court" demonstrating the existence of the foreign proceeding and "appointment of the foreign representative," *see* 11 U.S.C. § 1515(b)(1)-(3); and **(iii)** a statement must be filed "identifying all foreign proceedings with respect to the debtor that are known to the foreign representative," *see* 11 U.S.C. § 1515(c).[10]

37.    Here, this case has been commenced by the Petitioner—a foreign representative—by the filing of this Verified Petition.  11 U.S.C. § 1515(a).  The Verified Petition is accompanied by a copy of the BIA Order, which demonstrates the commencement of the Canadian Proceeding and further authorizes the appointment of the Petitioner as foreign

---

[10]    Section 1515(d) requires that documents submitted in connection with the requirements under section 1515(b) be translated into English.  Here, no translation is required and thus, the Petitioner respectfully submits that subsection (d) does not apply to the Verified Petition.

17772977\V-3

representative.  (Petitioner Decl. ¶21; Yates Decl. Ex. C); 11 U.S.C. § 1515(b)(1).  Further, the

Petitioner submits that the BIA Order constitutes "a certificate from the foreign court affirming

the existence of [the Canadian Proceeding] and of the appointment of the [Petitioner]."   11

U.S.C. § 1515(b)(2).  Finally, the Verified Petition is accompanied by the *Statement of Petitioner*

*Pursuant to 11 U.S.C. § 1515(c) Identifying Foreign Proceedings* filed concurrently herewith,

which identifies the Canadian Proceeding as the only known foreign proceeding with respect to

the Debtor.  11 U.S.C. § 1515(c).

38.     As set forth above, each of the prerequisites to recognition under section 1517

have been met.  Accordingly, the Petitioner respectfully requests that the Court recognize (i) the

Canadian Proceeding as a foreign main proceeding, or alternatively, a foreign nonmain

proceeding and (ii) the Petitioner as the Debtor's foreign representative.

**E.     The Petitioner is Entitled to Relief Under Section 1520**

39.     Upon recognition of the Canadian Proceeding as a foreign main proceeding,

section 1520 of the Bankruptcy Code prescribes certain forms or relief available to the Petitioner,

and respecting the Debtor's property within the territorial jurisdiction of the United States.  Such

relief is granted automatically as a consequence of recognition, and section 1520 requires no

further showing by the Petitioner to obtain such relief.  However, to the extent the Court

recognizes the Canadian Proceeding as a foreign nonmain proceeding, the Petitioner respectfully

requests that the Court enter an order pursuant to section 1521 of the Bankruptcy Code,

conferring on the Debtor and the Petitioner the benefits set forth in section 1520(a).

**F.     Recognition of the Canadian Proceeding is Not Contrary to Public Policy**

40.     Pursuant to section 1506 of the Bankruptcy Code, "[n]othing in [chapter 15]

prevents the court from refusing to take an action governed by this chapter if the action would be

manifestly contrary to the public policy of the United States."  Here, recognition of the Canadian

-21-

Proceeding as a foreign main proceeding, or, alternatively, a foreign nonmain proceeding, is not contrary to U.S. policy. As set forth above, chapter 15 was enacted to, among other things, promote (i) cooperation between United States courts and foreign courts in cross-border insolvency cases, (ii) the protection of all interested parties in a cross-border insolvency, and (iii) the "maximization of the value of the debtor's assets." *See* 11 U.S.C. § 1501(a). The Petitioner commenced the Canadian Proceeding and filed the Verified Petition in order to globally resolve its liabilities, prevent creditors from pursing individual remedies, preserve and maximize the value of its remaining assets, and ensure any such assets are equitably distributed. (*See* Petitioner Decl. ¶¶22-23, 27.) Thus, the Petitioner's objectives *advance* fundamental policies of U.S. bankruptcy law. Accordingly, in this case, U.S. public policy favors recognition.

**G.    Additional Relief Under Section 1521 is Necessary and Appropriate**

41.    "[W]here necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief. . . ." 11 U.S.C. § 1521(a). Such relief may include, "entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative," "providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities," and, except for certain avoidance provisions, "any additional relief that may be available to a trustee. . . ." 11 U.S.C. § 1521(a)(4), (5), and (7).

42.    The Petitioner's goal is to preserve and maximize the value of the Debtor's assets for the benefit of its creditors. This chapter 15 case was filed to help the Petitioner realize that goal. Accordingly, the Petitioner respectfully requests that it be (i) entrusted with the realization and administration of the Debtor's assets within the territorial jurisdiction of the United States

-22-

pursuant to section 1521(a)(5) of the Bankruptcy Code and (ii) empowered to examine witnesses and take evidence or delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities pursuant to section 1521(a)(4) of the Bankruptcy Code.  Such relief is needed in order for the Petitioner to complete the Debtor's wind down (including the closing of any open accounts), ensure that all distributable assets have been identified and collected, and enable the Petitioner to represent the Debtor's interests in connection with any U.S. proceedings related to its disputes with NSU and NYK, including any potential actions in connection with the Confirmation Order or any other such proceedings that may continue or otherwise initiate between the Debtor and its creditors during the course of this chapter 15 case.  Further, the relief is appropriate because the Petitioner is already vested with the power to take any such actions under Canadian law. (*See* Kraft Decl. ¶5.).

## NOTICE

43.    Notice of this Verified Petition has been provided in accordance with the terms set forth in the Debtor's *Ex Parte Motion for an Order (I) Scheduling Hearing Regarding Verified Chapter 15 Petition, and (II) Specifying Form And Manner of Service of Notice* filed concurrently herewith.  The Petitioner submits that such notice is proper and that no other or further notice need be provided.

## NO PRIOR REQUEST

44.    No prior motion or application for the relief requested herein has been made to this or any other Court.

[*signatures on following pages*]

17772977\V-3

## CONCLUSION

WHEREFORE, the Petitioner respectfully requests that this Court enter an order, substantially in the form of the attached Proposed Order, **(i)** recognizing the Canadian Proceeding as (a) a "foreign main proceeding" or, in the alternative, (b) a "foreign non-main proceeding" under sections 1502(4), 1502(5), 1515, and 1517 of the Bankruptcy Code; **(ii)** recognizing the Petitioner as the "foreign representative" of the Debtor as defined in section 101(24) of the Bankruptcy Code; **(iii)** granting the Petitioner authority—pursuant to section 1521(a) of the Bankruptcy Code—to (a) examine witnesses, take evidence, and deliver information concerning the Debtor's assets, affairs, rights, obligations, and liabilities and (b) administer, realize, and distribute any and all of the Debtor's assets within the territorial jurisdiction of the United States; and **(iv)** granting such other and further relief as the Court deems just and proper.

Dated: July 17, 2015
     New York, New York          Respectfully submitted,


DENTONS US LLP


     */s/ D. Farrington Yates*
D. Farrington Yates
Marc H. Mandel
James A. Copeland
1221 Avenue of the Americas
New York, New York 10020
Tel:  (212) 768-6700
Fax: (212) 768-6800

*Counsel for the Petitioner*

17772977\V-3

**<u>VERIFICATION OF CHAPTER 15 PETITION</u>**

Pursuant to 28 U.S.C. § 1746, I, Robert M. Mantrop, in my capacity as Director of the Petitioner,

declare as follows:

The Petitioner is the duly authorized foreign representative of the Debtor.  The Petitioner

has full authority to verify the foregoing chapter 15 petition for recognition of foreign main

proceeding, or alternatively, foreign nonmain proceeding, including each of the attachments

thereto, and is informed and believes that the allegations contained therein are true and accurate

to the best of the Petitioner's knowledge, information, and belief.

I, in my capacity as a Director of the Petitioner, declare under penalty of perjury under

the laws of the United States of America that the foregoing is true and correct.

Executed this 17th day of July 2015 in Ontario, Canada.

<div style="margin-left:40%;">

COGENT FIBRE INC., in its capacity as
the Debtor's duly authorized foreign
representative

_____
Name: Robert M. Mantrop
Title: Director

</div>

84336705