**DENTONS US LLP**
D. Farrington Yates
Marc H. Mandel
James A. Copeland
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

*Counsel for the Petitioner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 15 |
| COGENT FIBRE INC., | Case No. 15-_____ (___) |
| Debtor in a Foreign Proceeding. | Recognition Request Pending |

**DECLARATION OF D. FARRINGTON YATES IN SUPPORT**
**IN SUPPORT OF (I) VERIFIED PETITION FOR RECOGNITION OF**
**CANADIAN PROCEEDING UNDER CHAPTER 15 AND MOTION FOR ORDER**
**GRANTING RELATED RELIEF AND (II) MOTION FOR (I) *EX PARTE***
**EMERGENCY RELIEF AND (II) PROVISIONAL RELIEF PURSUANT**
**TO SECTION 1519 OF THE BANKRUPTCY CODE**

I, D. Farrington Yates, hereby declare under penalty of perjury:

1.      I am a member of the Bar of the State of New York and the firm of Dentons US LLP, counsel to Cogent Fibre, Inc. ("CFI" or the "Debtor") [1] as duly authorized foreign representative (in such capacity, the "Petitioner") in respect of that certain insolvency proceeding commenced pursuant to Canada's *Bankruptcy and Insolvency Act* (R.S.C. 1985, c. B-3) (the "BIA"), pending before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"), File No. 31-2016058 (the "Canadian Proceeding") concerning the Debtor and this chapter 15 case.  I hereby submit this declaration in support of the *Verified Petition for*

---

[1]     Capitalized words not otherwise defined herein shall have the meaning set forth in the Verified Petition.

*Recognition of Canadian Proceeding Under Chapter 15 and Motion for Order Granting Related Relief* (the "<u>Verified Petition</u>") and *Motion for (I) <u>Ex Parte</u> Emergency Relief and (II) Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* (the "<u>Stay Motion</u>").[2]

2.      Attached as **<u>Exhibit A</u>** is a true and correct copy of the resolution of CFI's board of directors appointing the Petitioner to serve as its foreign representative (as that term is defined under the Bankruptcy Code).

3.      Attached as **<u>Exhibit B</u>** is a true and correct copy of the NOI and corresponding Certificates of Filing for CFI.

4.      Attached as **<u>Exhibit C</u>** is a true and correct certified copy of the BIA Order entered by the Canadian Court on July 17, 2015.

5.      Attached as **<u>Exhibit D</u>** is a true and correct copy of the Confirmation Order issued by the District Court on July 14, 2015 (and entered on July 15, 2015).

6.      Attached as **<u>Exhibit E</u>** is a true and correct copy of the Judgment issued by the District Court on July 16, 2015.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  July 17, 2015
        New York, New York

                                /s/ D. Farrington Yates
                                D. Farrington Yates

84687712

---

[2]     The Petitioner respectfully reserves the right to file supplemental declarations in the event that additional documentation, other information, or authentication is required in connection with the Verified Petition, the Stay Motion, or any other matter related thereto.

**EXHIBIT A**

# COGENT FIBRE INC.

## DIRECTORS' RESOLUTION

The undersigned, being the directors of COGENT FIBRE INC. (the "**Corporation**"), hereby sign the following resolution pursuant to subsection 117(1) of the *Canada Business Corporations Act*:

## AUTHORIZATION TO FILE NOTICE OF INTENTION TO MAKE A PROPOSAL AND ACT AS FOREIGN REPRESENTATIVE

**BE IT RESOLVED THAT**:

1. The Corporation, an insolvent person, is hereby authorized to file a notice of intention to make a proposal with the Official Receiver pursuant to subsection 50.4(1) of the *Bankruptcy and Insolvency Act* (Canada) (the "**NOI Proceedings**").

2. The Corporation be and is hereby authorized to:

   a) act as the "foreign representative" (as such term is defined in the chapter 15 of title 11 of the United States Code (the "**U.S. Bankruptcy Code**")) in respect of the NOI Proceedings in foreign jurisdictions; and

   b) bring a motion before the Ontario Superior Court of Justice (Commercial List) (the "**Canadian Court**") seeking an Order of the Canadian Court authorizing the Corporation to act as the "foreign representative" in respect of the NOI Proceedings.

3. In its capacity as "foreign representative", the Corporation be and is hereby authorized to seek recognition of the NOI Proceedings pursuant to chapter 15 of title 11 of the U.S. Bankruptcy Code.

4. Any one director of the Corporation, being Donald McClure or Robert Mantrop, be and is hereby authorized and directed to do, sign, execute and deliver, whether under the corporate seal of the Corporation or otherwise, all deeds, documents, declarations and instruments necessary or desirable to commence and administer the NOI Proceedings, seek recognition of the NOI Proceedings pursuant to chapter 15 of title 11 of the U.S. Bankruptcy Code and otherwise give effect to the intent of this Directors' Resolution.

DATED the 15 day of July, 2015.

_____
**Donald McClure**

_____
**Robert Mantrop**

**EXHIBIT B**

District of:        Ontario
Division No.        09 - Toronto
Court No.
Estate No.

- FORM 33 -
Notice of Intention To Make a Proposal
(Subsection 50.4(1) of the Act)

In the Matter of the Proposal of
Cogent Fibre Inc.
Of the City of Toronto,
In the Province of Ontario

Take notice that:

1. I, Cogent Fibre Inc., an insolvent person, state, pursuant to subsection 50.4(1) of the Act, that I intend to make a proposal to my creditors.

2. The Fuller Landau Group Inc. of 151 Bloor St. West, 12th Floor, Toronto, ON, M5S 1S4, a licensed trustee, has consented to act as trustee under the proposal. A copy of the consent is attached.

3. A list of the names of the known creditors with claims of $250 or more and the amounts of their claims is also attached.

4. Pursuant to section 69 of the Act, all proceedings against me are stayed as of the date of filing of this notice with the official receiver in my locality.

Dated at the City of Toronto in the Province of Ontario, this 15th day of July 2015.

_____
Cogent Fibre Inc.
Insolvent Person

To be completed by Official Receiver:

_____        _____
Filing Date                             Official Receiver

Page 1 of 1

District of:       Ontario
Division No.     09 - Toronto
Court No.
Estate No.

- FORM 33 -
Notice of Intention To Make a Proposal
(Subsection 50.4(1) of the Act)

In the Matter of the Proposal of
Cogent Fibre Inc.
Of the City of Toronto,
in the Province of Ontario

| List of Creditors with claims of $250 or more. | | | |
|---|---|---|---|
| Creditor | Address | Account# | Claim Amount |
| NS United Kalun Kaisha Ltd. | c/o Richard Singleton II, Blank Rome<br>The Chrysler Building, 405 Lexington Ave.<br>New York NY 10174-0208 USA | | 15,524,400.00 |
| Total | | | 15,524,400.00 |

_____

Cogent Fibre Inc.
Insolvent Person

Page 2 of 2

**IN THE MATTER OF THE PROPOSAL OF
COGENT FIBRE INC.
OF THE CITY OF TORONTO,
IN THE PROVINCE OF ONTARIO**

**CONSENT**

We, The Fuller Landau Group Inc., licensed trustee in bankruptcy, consent to act as Trustee in a proposal to be filed by Cogent Fibre Inc. pursuant to the *Bankruptcy and Insolvency Act*.

DATED at Toronto, Ontario this 15th day of July, 2015.

**THE FULLER LANDAU GROUP INC.**

Per: _____

Ken Pearl

## COGENT FIBRE INC.

## DIRECTORS' RESOLUTION

The undersigned, being the directors of COGENT FIBRE INC. (the "**Corporation**"), hereby sign the following resolution pursuant to subsection 117(1) of the *Canada Business Corporations Act*:

## AUTHORIZATION TO FILE NOTICE OF INTENTION TO MAKE A PROPOSAL AND ACT AS FOREIGN REPRESENTATIVE

## BE IT RESOLVED THAT:

1. The Corporation, an insolvent person, is hereby authorized to file a notice of intention to make a proposal with the Official Receiver pursuant to subsection 50.4(1) of the *Bankruptcy and Insolvency Act* (Canada) (the "**NOI Proceedings**").

2. The Corporation be and is hereby authorized to:

   a) act as the "foreign representative" (as such term is defined in the chapter 15 of title 11 of the United States Code (the "**U.S. Bankruptcy Code**")) in respect of the NOI Proceedings in foreign jurisdictions; and

   b) bring a motion before the Ontario Superior Court of Justice (Commercial List) (the "**Canadian Court**") seeking an Order of the Canadian Court authorizing the Corporation to act as the "foreign representative" in respect of the NOI Proceedings.

3. In its capacity as "foreign representative", the Corporation be and is hereby authorized to seek recognition of the NOI Proceedings pursuant to chapter 15 of title 11 of the U.S. Bankruptcy Code.

4. Any one director of the Corporation, being Donald McClure or Robert Mantrop, be and is hereby authorized and directed to do, sign, execute and deliver, whether under the corporate seal of the Corporation or otherwise, all deeds, documents, declarations and instruments necessary or desirable to commence and administer the NOI Proceedings, seek recognition of the NOI Proceedings pursuant to chapter 15 of title 11 of the U.S. Bankruptcy Code and otherwise give effect to the intent of this Directors' Resolution.

DATED the 15 day of July, 2015.

_____
**Donald McClure**

_____
**Robert Mantrop**



**Industry Canada**
**Office of the Superintendent of Bankruptcy Canada**

**Industrie Canada**
**Bureau du surintendant des faillites Canada**

District of          Ontario
Division No.       09 - Toronto
Court No.          31-2016058
Estate No.         31-2016058

In the Matter of the Notice of Intention to make a proposal of:

**Cogent Fibre Inc.**
Insolvent Person

**THE FULLER LANDAU GROUP INC.**
Trustee

---

Date of the Notice of Intention:              July 15, 2015

---

CERTIFICATE OF FILING OF A NOTICE OF INTENTION TO MAKE A PROPOSAL
Subsection 50.4 (1)


-- AMENDED --


I, the undersigned, Official Receiver in and for this bankruptcy district, do hereby certify that the aforenamed insolvent person filed a Notice of Intention to Make a Proposal under subsection 50.4 (1) of the *Bankruptcy and Insolvency Act.*

Pursuant to subsection 69(1) of the Act, all proceedings against the aforenamed insolvent person are stayed as of the date of filing of the Notice of Intention.


Date: July 16, 2015, 13:31

E-File/Dépôt Electronique                                                      Official Receiver

25 St. Clair Avenue East, 6th floor, Toronto, Ontario, Canada, M4T1M2, (877)376-9902



**EXHIBIT C**



Court File No. 31-2016058
Estate No. 31-2016058

### ONTARIO
### SUPERIOR COURT OF JUSTICE
### (IN BANKRUPTCY AND INSOLVENCY)
### [COMMERCIAL LIST]

| | | |
|---|---|---|
| THE HONOURABLE | ) | FRIDAY, THE 17TH |
| | ) | |
| JUSTICE  *PATTILLO* | ) | DAY OF JULY, 2015 |

### IN THE MATTER OF THE *BANKRUPTCY AND INSOLVENCY ACT*, R.S.C. 1985, c. B-3, AS AMENDED

### AND IN THE MATTER OF THE PROPOSAL OF COGENT FIBRE INC.

### ORDER APPOINTING FOREIGN REPRESENTATIVE

**THIS MOTION** made by Cogent Fibre Inc. ("**CFI**"), for an order authorizing CFI to act as the foreign representative in respect of the proceedings commenced by CFI pursuant to the filing of a Notice of Intention to Make a Proposal pursuant to the *Bankruptcy and Insolvency Act* (Canada) on July 15, 2015 (the "**NOI Proceedings**"), was heard this day at 330 University Avenue, Toronto, Ontario.

**ON READING** the Notice of Motion dated July 16, 2015 and the Affidavit of Robert Mantrop sworn July 16, 2015, and on hearing the submissions of counsel for CFI, no other party having been served other than The Fuller Landau Group Inc. in its capacity as the proposal trustee (the "**Proposal Trustee**") as appears from the affidavit of Joanna Lewandowska sworn July 16, 2015, filed:

THIS IS TO CERTIFY THAT THIS
DOCUMENT, EACH PAGE OF
WHICH IS STAMPED WITH THE
SEAL OF THE SUPERIOR COURT
OF JUSTICE AT TORONTO, IS A
TRUE COPY OF THE DOCUMENT
ON FILE IN THIS OFFICE

LA PRÉSENT ATTEST QUE CE
DOCUMENT, DONT CHACUNE
DES PAGES EST REVÊTUE DU
SCEAU DE LA COUR SUPÉRIEURE
DE JUSTICE A TORONTO, EST UNE
COPIE CONFORME DU DOCUMENT
CONSERVÉ DANS CE BUREAU

DATED AT TORONTO THIS **17th** DAY OF **July** 20 **15**
FAIT À TORONTO LE                    JOUR DE

REGISTRAR                                          GREFFIER

- 2 -

THIS IS TO CERTIFY THAT THIS
DOCUMENT, EACH PAGE OF
WHICH IS STAMPED WITH THE
SEAL OF THE SUPERIOR COURT
OF JUSTICE AT TORONTO, IS A
TRUE COPY OF THE DOCUMENT
ON FILE IN THIS OFFICE

DATED AT TORONTO THIS 17th DAY OF July 20 15
FAIT À TORONTO LE          JOUR DE

REGISTRAR                  GREFFIER

LA PRÉSENT ATTEST QUE CE
DOCUMENT, DONT CHACUNE
DES PAGES EST REVÊTUE DU
SCEAU DE LA COUR SUPÉRIEURE
DE JUSTICE À TORONTO, EST UNE
COPIE CONFORME DU DOCUMENT
CONSERVÉ DANS CE BUREAU

**SERVICE**

1.      **THIS COURT ORDERS** that the time for service of the Notice of Motion and the Motion Record is hereby abridged and validated so that this Motion is properly returnable today and hereby dispenses with further service thereof.

**FOREIGN REPRESENTATIVE**

2.      **THIS COURT ORDERS** that CFI is hereby authorized and empowered to: (i) act as the foreign representative in respect of the NOI Proceedings; (ii) seek recognition of the NOI Proceedings in foreign jurisdictions, including pursuant to chapter 15 of title 11 of the United States Code; (iii) seek recognition of any orders made by this Honourable Court in the NOI Proceedings from time to time, as CFI may determine appropriate for foreign recognition; (iv) request that the courts of such foreign jurisdictions (the "**Foreign Courts**") lend assistance to this Honourable Court; and (v) seek any other appropriate relief from the Foreign Courts that CFI deems just and proper.

**SERVICE AND NOTICE**

3.      **THIS COURT ORDERS** that the E-Service Protocol of the Commercial List (the "**Protocol**") is approved and adopted by reference herein and, in this proceeding, the service of documents made in accordance with the Protocol (which can be found on the Commercial List website at http://www.ontariocourts.ca/scj/practice/practice-directions/toronto/e-service-protocol/ ) shall be valid and effective service. Subject to Rule 17.05 this Order shall constitute an order for substituted service pursuant to Rule 16.04 of the Rules of Civil Procedure. Subject to Rule 3.01(d) of the Rules of Civil Procedure and paragraph 21 of the Protocol, service of documents in accordance with the Protocol will be effective on transmission. This Court further orders that a Case Website shall be established in accordance with the Protocol with the following URL '<http://fullerllp.com/cogent>'.

4.      **THIS COURT ORDERS** that if the service or distribution of documents in accordance with the Protocol is not practicable, CFI and the Proposal Trustee are each at liberty to serve or distribute this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal

- 3 -

delivery or facsimile transmission to CFI's creditors or other interested parties at their respective addresses as last shown on the records of CFI and that any such service or distribution by courier, personal delivery or facsimile transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

THIS IS TO CERTIFY THAT THIS DOCUMENT, EACH PAGE OF WHICH IS STAMPED WITH THE SEAL OF THE SUPERIOR COURT OF JUSTICE AT TORONTO, IS A TRUE COPY OF THE DOCUMENT ON FILE IN THIS OFFICE

LA PRÉSENT ATTEST QUE CE DOCUMENT, DONT CHACUNE DES PAGES EST REVÊTUE DU SCEAU DE LA COUR SUPÉRIEURE DE JUSTICE A TORONTO, EST UNE COPIE CONFORME DU DOCUMENT CONSERVÉ DANS CE BUREAU

DATED AT TORONTO THIS 17th DAY OF July 20 15
FAIT À TORONTO LE                     JOUR DE

REGISTRAR                              GREFFIER

IN THE MATTER OF THE PROPOSAL OF COGENT FIBRE INC.

Court File No: 31-2016058
Estate No. 31-2016058

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**ORDER APPOINTING FOREIGN REPRESENTATIVE**

**DENTONS CANADA LLP**
77 King Street West, Suite 400
Toronto-Dominion Centre
Toronto, ON M5K 0A1
Fax:    (416) 863-4592

**Kenneth Kraft**
Tel: (416) 863-4374
Email: kenneth.kraft@dentons.com

**Sara-Ann Van Allen**
Tel: (416) 863-4402
Email: sara.vanallen@dentons.com

*Lawyers for Cogent Fibre Inc.*

Court File No. 31-2016058
Estate No.: 31-2016058

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(IN BANKRUPTCY AND INSOLVENCY)**
**[COMMERCIAL LIST]**

Proceeding commenced at Toronto

**MOTION RECORD**
**(returnable July 17, 2015)**

**DENTONS CANADA LLP**
77 King Street West, Suite 400
Toronto-Dominion Centre
Toronto, ON M5K 0A1
Fax:    (416) 863-4592

**Kenneth Kraft**
Tel: (416) 863-4374
Email: kenneth.kraft@dentons.com

**Sara-Ann Van Allen**
Tel: (416) 863-4402
Email: sara.vanallen@dentons.com

*Lawyers for Cogent Fibre Inc.*

IN THE MATTER OF THE PROPOSAL OF COGENT FIBRE INC.

July 17, 2015

Based on the materials filed, I am satisfied that Cogent Fibre Inc. should be appointed a "foreign Representative" pursuant to s. 278 of the BIA. Order as asked in my view.

16176811_1\NATDOCS

**EXHIBIT D**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

NS UNITED KAIUN KAISHA, LTD.,

                Plaintiff,

        -v-

COGENT FIBRE INC.,

               Defendant.

------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/14/2015

15 Civ. 1784 (PAE)

OPINION & ORDER

**PAUL A. ENGELMAYER, District Judge:**

NS United Kaiun Kaisha, Ltd. ("NSU") petitions to confirm an arbitration award (the "Award") pursuant to § 9 of the Federal Arbitration Act ("FAA" or "Act"), 9 U.S.C. § 9. Respondent Cogent Fibre Inc. ("Cogent") opposes the petition and cross-moves to vacate the Award under § 10 of the FAA. For the following reasons, NSU's petition to confirm the Award is granted, and Cogent's cross-motion to vacate the Award is denied.

## I.    Background

### A.    Factual Background[1]

NSU, headquartered in Japan, provides international maritime transportation services for raw materials. *See* NSU Aff., Ex. 3 ("Award"), at 2. Cogent, a Canadian company, exports woodchips and woodchip pellets from American producers to consumers in Europe, mainly in Turkey. *Id.* at 3.

---

[1] These facts are drawn from the Petition to Recognize and Enforce Arbitration, Dkt. 1 ("Petition"), and the exhibits attached thereto; the affidavit filed by NSU, Dkt. 5 ("NSU Aff."); and the two declarations filed by the parties, Dkt. 9 ("Cogent Decl."), Dkt. 14 ("NSU Decl.").

On May 28, 2008, NSU and Cogent entered into a five-year continuous-voyage contract

for Cogent to charter the Daishin Maru, a cargo ship owned by NSU.  *See* NSU Aff., Ex. 1

("Charter" or "CVC").  The CVC provided that the Daishin Maru would carry woodchips from

Savannah, Georgia to Igsas, Turkey—or on any other route of Cogent's choosing, conditioned on

NSU's approval—at a rate of $0.60 per cubic foot.  *Id.* Cl. 1, 9.  The CVC also detailed loading

time allowances at the port of origin and set penalties to be incurred by Cogent for every day the

ship would be delayed at port.  *Id.* Cl. 4, 43.  To resolve "any dispute or difference [that] should

arise under th[e] Charter," the parties agreed to submit to binding arbitration by "three parties in

the City of New York, one to be appointed by each of the parties hereto, the third by the two so

chosen."  *Id.* Cl. 5.

The Charter also contained a dry-docking clause.  It gave NSU the option to dry-dock the

Daishin Maru during the period covered by the Charter,[2] on the conditions that Cogent be

advised within six months of planned dry-docking and that the "period [] be mutually agreed

between Owner and Charterers."[3]  *Id.* Cl. 55.  After delivery of the Daishin Maru to Cogent on

February 19, 2009, and more than 15 successful transatlantic voyages, NSU notified Cogent that

the Daishin Maru would require dry-docking in August and September 2011.  Award at 5.  A

dispute arose between NSU and Cogent over the dry-docking schedule for the ship, and NSU,

---

[2] Dry-docking involves "remov[ing] [a ship] from the water to enable work to be performed on the exterior part of the ship below the waterline."  Occupational Health and Safety Administration, *Process: Dry Docking and Launching, available at* https://www.osha.gov/ SLTC/shipbuildingrepair/drydocking.html (last visited July 14, 2015).

[3] The meaning of the term "period" as used in the clause was disputed during the arbitration.  *See* Award at 16.  Cogent argued that the term referred to the date on which the ship was to go into dry-dock; NSU argued that it referred to the duration the ship was to spend in dry-dock.  *Id.* at 18.  The panel majority found for NSU on this point.  *Id.*

over Cogent's objections, eventually decided to dry-dock the Daishin Maru from September 7,

2011 to October 16, 2011 in Sevastopol, Ukraine. *Id.* at 6.

After dry-docking was complete, Cogent refused to provide NSU with cargo and stated

that no cargo would be available until late November or mid-December 2011. *Id.* Cogent

suggested that the Daishin Maru complete mitigation voyages, but NSU, relying on a clause in

the contract providing that if no port declaration is made, the ship should be directed to

Savannah, directed the Daishin Maru to Savannah to await Cogent's cargo. *Id.* at 6 n.12. The

ship arrived in Savannah on November 5, 2011. *Id.* at 6. At that point, Cogent told NSU that no

cargo would be available until mid-December. *Id.*

On December 21, 2011, after several weeks in Savannah and six requests to Cogent for

assurance that a cargo would be nominated, NSU terminated the Charter and withdrew the

Daishin Maru. *Id.* at 7. NSU performed a total of 10 mitigation voyages in the Atlantic Ocean

between December 27, 2011 and June 29, 2013. *Id.* at 25. On June 29, 2013, NSU sold the

Daishin Maru. *Id.* at 8.

**B.     Arbitration**

On February 1, 2012, NSU commenced arbitration against Cogent and appointed

Manfred Arnold as arbitrator. NSU Decl. ¶ 4. Cogent appointed Jack Berg as arbitrator, and in

March 2012, the parties jointly appointed the chairman of the arbitration panel, David

Martowski. *Id.* at ¶¶ 5–6.

Over the next year and a half, the parties engaged in extensive discovery, presented more

than 650 exhibits to the arbitrators, and, between May 2013 and January 2014, conducted 10

evidentiary hearings. *Id.* at ¶¶ 9–10. In April and May 2014, the parties submitted final briefs.

*Id.* at ¶12. NSU asserted a claim for $13,780,297.72 plus interest, attorneys' fees, and costs

3

against Cogent, while Cogent brought a counterclaim for lost earnings of $15,285,951 or, in the alternative, $13,645,338 arising from NSU's alleged breach of the CVC.  Award at 1–2.

On January 23, 2015, the panel issued its final (33-page) decision, unanimously finding that Cogent had breached the Charter in October 2011 when it refused to provide a cargo for the Daishin Maru, and that it was therefore liable for damages resulting from the breach. *Id.* at 18. The panel split two to one on the issue of damages. *Id.*  The majority, consisting of Arnold and Martowski, *id.* at 33, awarded $11,606,421.51 to NSU, *id.* at 32.  The award was composed of five elements: $9,933,900.60 in damages arising from Cogent's breach of the CVC, $571,389.15 in interest on those damages, $97,967.91 in arbitration costs borne by NSU, $113,615.90 in arbitrators' fees, and $889,547.95 in legal fees NSU paid during the arbitration. *Id.*  Damages from the breach of the Charter were calculated for two separate periods:  First, the majority awarded $1,324,836 in damages for the period between October 16, 2011 and December 26, 2011, when the ship left dry-docking and traveled to Savannah to wait for a cargo from Cogent. *Id.* at 25.  Second, the majority awarded $8,609,064.60 in damages for the period between December 27, 2011 and June 29, 2013, when NSU performed mitigation voyages, which the majority found constituted reasonable mitigation efforts. *Id.* at 28.

Berg, although agreeing as to Cogent's liability, dissented as to the damages awarded. Dkt. 5, Ex. 3, Appendix A ("Berg Dissent"), at 1.  First, Berg disagreed with the amount awarded to NSU for the first period, between October 16, 2011 and December 26, 2011. *Id.* at 3.  Berg found that because Cogent had warned NSU that no cargo would be available, and NSU knew the Daishin Maru would sit and wait for a non-existent cargo if it was directed to Savannah after dry-docking, the ship should have been directed to conduct mitigation voyages immediately. *Id.*

at 3–4 . Accordingly, Berg found that the $1,324,836 in lost profits should have been reduced by the amount NSU could have saved in mitigation, rather than awarded in its entirety. *Id.* at 4.

Second, Berg dissented from the award of $8,609,064.60 for the period between December 27, 2011 and June 29, 2013. *Id.* Berg explained that the evidence presented reflected that opportunities for voyages in the Pacific Ocean were more certain and profitable than in the Atlantic, and that NSU had purposefully kept the Daishin Maru in the Atlantic in anticipation of a future long-term charter with a third party. *Id.* Berg therefore concluded that NSU's mitigation efforts had been unreasonable, and that the damages awarded for the second time period should have been reduced by the amount NSU could have saved by engaging in reasonable mitigation. *Id.*

Finally, Berg dissented from the award of attorneys' fees. Reviewing the four potential exceptions to the American Rule, *i.e.*, that each party pays its own fees regardless of the outcome in litigation, Berg found that none applied to the dispute, and so no attorneys' fees should have been granted. *Id.* at 5–6.

### C. Procedural History of This Action

On March 10, 2015, NSU filed the Petition and a supporting memorandum of law. Dkt. 1 ("Petition"), 4 ("NSU Br."). The Petition seeks confirmation of the arbitral award, plus interest to the date of judgment. Petition ¶ 20.

On April 15, 2015, Cogent filed a cross-motion to vacate the award and a supporting memorandum of law and declaration. Dkt. 11 ("Cross-Motion"), 8 ("Cogent Br."), 9 ("Cogent Decl."). Cogent raises three distinct challenges to the arbitral award, two of which mirror Berg's dissent from the majority's calculation of damages: First, Cogent argues that the Award was in manifest disregard of the law because the damage calculations failed to correctly account for the

mitigation efforts required of NSU. Cogent Br. 4–9. Second, it contends that the arbitration

panel exceeded its authority in awarding attorneys' fees. *Id.* at 10. Third, Cogent challenges as

fundamentally unfair the procedure by which the arbitration was conducted, specifically, that the

arbitrators authorized the parties to make submissions via email. *Id.* at 14. Cogent accordingly

seeks an order vacating the Award. Cross-Motion 1.

On April 28, 2015, NSU filed its reply memorandum of law in further support of the

Petition and in opposition to the Cross-Motion, along with a declaration. Dkt. 13 ("NSU Reply

Br."), 14 ("NSU Decl.").

## II. Applicable Legal Standards

Under the FAA, a federal district court reviewing an arbitration award "can confirm

and/or vacate the award, either in whole or in part." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d

95, 104 (2d Cir. 2006). However, judicial review of arbitration awards is "'severely limited,' so

as not to frustrate the 'twin goals of arbitration, namely, settling disputes efficiently and avoiding

long and expensive litigation.'" *Scandinavian Reins. Co. v. Saint Paul Fire & Marine Ins. Co.*,

668 F.3d 60, 71–72 (2d Cir. 2012) (citations omitted). The reviewing court owes "strong

deference" to "arbitral awards and the arbitral process," *Porzig v. Dresdner, Kleinwort, Benson,

N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007), and so a party seeking to vacate an arbitral award

"must clear a high hurdle," *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671

(2010). "It is not enough for petitioners to show that the panel committed an error—or even a

serious error." *Id.*

Indeed, "[i]f there is 'even a barely colorable justification for the outcome reached,' the

court must confirm the arbitration award." *Willemijn Houdstermaatschappij, BV v. Standard

Microsystems Corp.*, 103 F.3d 9, 13 (2d Cir. 1997) (quoting *Matter of Andros Compania

*Maritima, S.A.*, 579 F.2d 691, 704 (2d Cir. 1978)).  Courts have authority to vacate arbitration awards only in certain narrow, enumerated circumstances, such as "where there was evident partiality or corruption in the arbitrators" or "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10.

## III.  Discussion

Cogent brings three separate challenges to the Award:  It claims that (a) the arbitral panel acted in manifest disregard of the law in assessing damages; (b) the panel exceeded its authority in awarding attorneys' fees; and (c) the arbitration procedure was fundamentally unfair.  The Court addresses each argument in turn.

### A.  Whether the Panel Manifestly Disregarded the Law in Awarding Damages

Arbitral awards should be vacated under the manifest disregard standard "only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent."  *T. Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) (citation omitted).  To satisfy this standard, there must be "a showing that the arbitrators knew of the relevant [legal] principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." *Stolt-Nielsen S.A.*, 559 U.S. at 672 n.3.

Such a review is thus "highly deferential to the arbitrators," in large part because a more flexible standard of review would "frustrate the basic purpose of arbitration, which is to dispose of disputes quickly and avoid the expense and delay of extended court proceedings." *STMicroelectronics, N.V. v. Credit Suisse Securities (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011) (citation omitted).  Accordingly, an arbitral award should not be vacated "because of a simple

error in law or a failure by the arbitrators to understand or apply it." *Id.* A court should only

vacate an award "when a party clearly demonstrates that the panel *intentionally* defied the law."

*Id.* (emphasis added).

Cogent argues that both components of the arbitration panel's damage award were

calculated in manifest disregard of the law. The court addresses in order the two time periods

reflected in the Award. Award at 25–28.

### 1.    Award for the October 16, 2011 to December 26, 2011 Period

First, Cogent challenges the award of $1,324,836 for the time period spanning from

October 16, 2011, the day the ship left dry-dock, to December 26, 2011, the last day before NSU

withdrew from the CVC and commenced its mitigation voyages. Cogent argues, relying on

Berg's dissent, that the panel majority ignored the fundamental principle that "a non-breaching

party to a contract has the obligation to mitigate damages." Cogent Br. at 5. Rather than

accounting for NSU's duty to mitigate its damages during the first time period, the majority

stated only that Cogent's failure to mitigate argument "overlooks the fact that Charterer was in

breach of the CVC and not NSU." Award at 25. Because the majority therefore did not deduct

from its award the amount NSU could have saved by conducting mitigation during this period,

Cogent argues, the award manifestly disregarded the law.

Cogent is correct, and NSU does not dispute, that it is a "fundamental" principle of

contract law that the non-breaching party to a contract has a duty to mitigate its damages. *See,

e.g.*, Restatement (Second) of Contracts § 350; *Tractebel Energy Marketing, Inc. v. AEP Power

Marketing, Inc.*, 487 F.3d 89, 110 n.21 (2d Cir. 2007); *Losei Realty Corp. v. City of New York*,

171 N.E. 889, 902 (N.Y. 1930).[4]  Because the arbitration panel found that Cogent breached the

Charter on October 16, 2011, NSU's duty to mitigate arose on that date.  *See White v. Farrell*,

987 N.E.2d 244, 252 (N.Y. 2013) ("The time-of-the-breach rule is longstanding in New York, as

illustrated by the preceding Cook's tour of appellate decisions from throughout the State and as

early as 1916; [and] 'seems to be the rule everywhere' in the United States.'") (internal citations

omitted); *Brushton-Moira Cent. Sch. Dist. v. Fred H. Thomas Assocs., P.C.*, 692 N.E.2d 551,

554 (N.Y. 1998) ("[D]amages are properly ascertained at the time of breach . . . [and] the injured

party has a duty to mitigate damages.").  The panel therefore should have addressed that duty and

reduced the damage award accordingly.

However, although the panel did not explicitly address NSU's duty to mitigate during the

first time period in the damages portion of the Award, the panel indirectly addressed the issue in

its discussion of liability.  There, the majority appears to have concluded that NSU was

reasonable in waiting until December 26, 2011 to begin its mitigation efforts.  As the panel

noted, Cogent did not unilaterally terminate the Charter on October 16, 2011; instead, it made

vague assurances to NSU that a cargo would eventually be provided.  Indeed, on October 19,

2011, NSU was told a cargo would be available in late November or mid-December 2011.

Award at 6.  When the Daishin Maru arrived in Savannah on November 5, 2011, NSU was told

that no cargo would be available until mid-December.  *Id.*  Finally, in late November and early

December, NSU made multiple requests for reassurance that a cargo would be provided, and

Cogent failed to respond.  *Id.* at 7.

---

[4] The Charter does not contain a choice-of-law clause.  In their briefs to the arbitral panel, however, the parties agreed that New York law applies.  *See* NSU Decl., Ex. 4, at 49; Cogent Decl., Ex. 8, at 53.  The Court therefore applies New York law here.

Although the parties' submissions do not indicate the average length of a spot mitigation voyage, NSU disclosed in its post-hearing submission to the arbitrators that the combined length of two of its post-December 2011 mitigation voyages was 93.4 days, or roughly 46.7 days each. NSU Decl., Ex. 3, at 23. Based on this evidence, the arbitrators could have reasonably concluded that NSU did not have sufficient time to procure and conduct a mitigation voyage between October 19, 2011, when the ship left dry-dock, and late November, when Cogent indicated it expected to have a cargo available; or between November 5, 2011, when NSU received notification of further delay, and mid-December, when Cogent had informed NSU that a cargo would be available.

More importantly, given the troubled relationship between Cogent and NSU after the dry-docking dispute, it was also reasonable for NSU to be uncertain about whether the Charter had been repudiated when Cogent refused to indicate a loading port on October 17, 2011. The arbitral panel, upon reviewing the charterer's duty to provide a cargo in voyage charters, cited approvingly to the Restatement of Contracts provisions on repudiation and requests for reassurance. Award at 20. The panel explained that "if a party is in doubt whether the charter has been repudiated, he is entitled to seek adequate assurances of performance from his contractual partner." *Id.* at 21 (quoting Rest. 2d Contracts). Accordingly, the arbitrators appear to have found it reasonable for NSU, in the face of the uncertainty created by Cogent's vague and shifting references to future availability of cargo, to direct its ship to Savannah and request reassurance that the Charter would not be terminated, rather than to assume that the Charter had been terminated and immediately undertake mitigation voyages. The panel's discussion of requests for reassurance in continuous voyage contracts relies on multiple arbitration awards as

well as on the Restatement of Contracts. As such, it provides more than a "barely colorable" justification for its decision. *Willemijn*, 103 F.3d at 13.

Moreover, Cogent has not shown that any error by the panel majority was a *willful* misapplication of the law. Cogent summarily declares that the majority "chose to ignore this fundamental legal principle," Cogent Br. 5, without providing any evidence of intentional misconduct. In fact, the panel noted earlier in the Award that Cogent had advised NSU to start mitigation voyages when the Daishin Maru left dry-docking on October 16, 2011. *Id.* at 23. And the panel's later statement that Cogent "overlook[ed] the fact that [it] was in breach of the CVC and not NSU," *id.* at 25, seems to be a direct response to Cogent's argument. Although the panel may have misunderstood Cogent's argument with respect to the mitigation efforts that NSU had a duty to undertake, *see* Cogent Decl., Ex. 10, at 70, it appears to have addressed what it perceived to be Cogent's argument. Absent a demonstration that "the panel *intentionally* defied the law," *STMicroelectronics*, 648 F.3d at 78 (emphasis added), rather than merely failed to understand or apply it, the Court cannot vacate the Award for manifest disregard of the law. *See Goldman Sachs Execution & Clearing, L.P. v. Official Unsecured Creditors' Comm. of Bayou Grp., LLC*, 491 F. App'x 201, 206 (2d Cir. 2012) (summary order) (declining to address whether arbitrators had erroneously applied New York law because there was no showing that such error, if any, was intentional); *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 392–93 (2d Cir. 2003) (confirming award even though it "only arguably conforms to legal standards" because there was no "clear demonstration that the panel intentionally defied the law").

### 2. Award for the December 27, 2011 to June 29, 2013 Period

Cogent also challenges the $8,609,064.60 the panel awarded to NSU for the period spanning December 27, 2011 to June 29, 2013. Cogent argues that the panel did not properly evaluate NSU's mitigation efforts during that period, specifically, that NSU's commercial decision to keep the Daishin Maru in the Atlantic Ocean unreasonably reduced the profits NSU could have earned during that time. *See* Cogent Br. at 5–6.

A non-breaching party to a contract has a duty to undertake reasonable efforts to mitigate its losses. *See Lasalle Bank Nat'l Assoc. v. Nomura Asset Capital Corp.*, 846 N.Y.S.2d 95, 99 (1st Dep't 2007); *Jewish Press, Inc. v. Willner*, 594 N.Y.S.2d 51, 51 (2d Dep't 1993); *see also Fed. Ins. Co. v. Sabine Towing & Transp. Co.*, 783 F.2d 347, 350 (2d Cir. 1986); *Ellerman Lines, Ltd. v. The President Harding*, 288 F.2d 288, 290 (2d Cir. 1961). Cogent relies heavily on Professor Martin Davies, Director of Tulane Law School's Maritime Law Center, who provided an expert report and testimony for the arbitration panel. Cogent argues that Professor Davies provided the panel with another "well-settled" principle of law: that "the consequences of a commercial decision of a non-breaching party fall on the non-breaching party." Cogent Br. 6. In his report, Davies therefore argued that if a comparable long-term charter had been available at the time a CVC was repudiated, that charter should be used as the basis for assessing whether the mitigation efforts were reasonable, regardless of what mitigation the non-breaching party actually conducted. Cogent Decl., Ex. 11, at 4. This viewpoint, however, squarely contradicts Second Circuit law, cited by NSU in its brief submitted to the arbitration panel, which states that "if the course of action chosen by the plaintiff was reasonable, the plaintiff can recover despite the existence of another reasonable course of action that would have avoided further damage." *Federal Ins. Co.*, 783 F.2d at 350.

12

Further, Davies acknowledged in his report that his differing assessment of damages

owed to NSU is premised on the availability of a comparable long-term charter in the Pacific, a

factual determination that, he admitted, "is for the arbitrators to decide." Cogent Decl., Ex. 11,

at 7. Davies therefore did not provide the panel with "well-settled" law, but rather with expert

testimony that was contradicted by NSU, and that the arbitrators were free to disregard in their

determination. The Award directly addressed the reasonableness of NSU's mitigation efforts,

including the propriety of leaving the ship in the Atlantic rather than seeking mitigation in the

Pacific. *See* Award at 25–28. Relying on both Second Circuit precedent and past arbitration

awards, the arbitrators held that NSU's efforts were reasonable, finding that "arbitrators have the

benefit of hindsight, but that is not a privilege the parties had at the time of their dispute." *Id.* at

27. In awarding $8,609,064.60 in damages for the period between December 27, 2011 and June

29, 2013, the decision clearly recognized, and applied, the established law on evaluating the

mitigation efforts of a non-breaching party.

**B.** **Whether the Panel Incorrectly Awarded Attorneys' Fees**

Cogent's next argument is that, in granting attorneys' fees to NSU, the arbitrators both

exceeded the authority conferred on them under the CVC and acted in manifest disregard of the

law. Because Cogent's arguments, although presented separately, involve the same issues and

reasoning, the Court addresses them together. Cogent argues that, first, the arbitrators could not

properly award attorneys' fees because the arbitration clause does not explicitly authorize such

an award, Cogent Br. at 7, 13; second, even if the arbitrators were empowered to award fees,

New York law prevents them from doing so, *id.* at 9; and third, even if New York law did not

present that hurdle, none of the exceptions to the American Rule against awarding fees was

satisfied, *id.* at 8. For the following reasons, these arguments are all unavailing.

13

It is a "foundational FAA principle that arbitration is a matter of consent." *Stolt-Nielsen*, 559 U.S. at 684. Arbitrators "derive[] [their] power from the parties' agreement to forgo the legal process and submit their disputes to private resolution," *id.* at 682, and as such are bound by the parties' intentions as to which issues are arbitrable, with whom, and under which rules, *id.* at 683–84. Arbitrators must "give effect to these contractual limitations." *Id.* at 684. Accordingly, an award which "ignores the essence of the parties' agreement" can be vacated as exceeding the arbitrators' authority to decide an issue. *Ibar Ltd. v. Am. Bureau of Shipping*, 92 F. App'x 820, 821 (2d Cir. 2004) (summary order). In determining whether an arbitration panel exceeded its authority, the question is "whether the panel had the contractual authority 'to reach a certain issue, not whether [the panel] correctly decided that issue.'" *Id.* (quoting *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 220 (2d Cir. 2002)).

Here, the agreement between the parties is silent as to the issue of attorneys' fees. But to the extent Cogent argues that the lack of an explicit reference to the arbitrators' power to award attorneys' fees in the arbitration clause of the CVC prevents them from doing so, this contention is squarely contradicted by the Second Circuit's ruling in *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193 (2d Cir. 1996). The Second Circuit there held that when an arbitration agreement provided for "any and all controversies" to be submitted to arbitration, and contained no express limitation with respect to attorneys' fees, the arbitrators were empowered to consider applications for such fees. *Id.* at 1202. The arbitration clause in the CVC between Cogent and NSU is equally broad. It mandates that "if any dispute or difference should arise under [the] Charter," it should be referred for arbitration. Charter Cl. 5. Accordingly, under *PaineWebber*, it was within the power of the arbitrators to consider NSU's application for attorneys' fees. The arbitration panel

(correctly) referred to *PaineWebber* in deciding to consider NSU's request for fees, Award at 30–31, and did not exceed its authority in doing so.

Cogent next argues that, given the breadth of the arbitration clause, New York law preempts an award of attorneys' fees. Cogent's argument relies principally on the decision in *Stolt-Nielsen*, in which the Supreme Court held that where an agreement is silent as to an arbitration issue, the arbitrators must look to an applicable rule of law found "either in the FAA itself, or [in] one of the . . . bodies of law that the parties claim[] [are] governing." 559 U.S. at 673. Cogent argues, as it did to the panel, *see* Cogent Decl., Ex. 5, at 2, that New York law precludes arbitrators from awarding attorneys' fees where such authority is not granted expressly in an arbitration agreement, *see* N.Y. C.P.L.R. § 7513. Cogent thus argues that the award of fees was in manifest disregard of the law.

In *PaineWebber*, however, the Second Circuit held that the FAA takes precedence over state law and allows arbitrators to award attorneys' fees when an agreement's arbitration clause is sufficiently broad. *PaineWebber*, 81 F.3d at 1202. Although the agreement under review specified that it was governed by New York law, the Circuit held that arbitrators' ability to grant attorneys' fees was not limited by state law because "a choice of law provision will not be construed to impose substantive restrictions on the parties' rights under the Federal Arbitration Act, including the right to arbitrate claims for attorneys' fees." *Id.*; *see also Sec. Ins. Co. of Hartford v. TIG Ins. Co.*, 360 F.3d 322, 327 (2d Cir. 2004) ("[I]n cases where an ambiguity is introduced by the choice-of-law provision, federal policy . . . requires a specific reference to the restrictions on the parties' substantive rights . . . to establish that the parties clearly intended to limit their rights under the FAA."); *Stemcor U.S.A., Inc. v. Miracero, S.A. de C.V.*, No. 14 Civ. 921 (LAK), 2014 WL 5005041, at *5 n.45 (S.D.N.Y. Sept. 30, 2014) (appeal dismissed Jan. 8,

15

2015) (finding, per *PaineWebber*, that a choice of law provision in arbitration clause did not

limit arbitrators' authority to award attorneys' fees); *In re. Arbitration Between Gen. Sec. Nat'l*

*Ins. Co. and AequiCap Program Adm'rs*, 785 F. Supp. 2d 411, 419 (S.D.N.Y. 2011) (holding

that arbitrators were empowered to award attorneys' fees when the contract contained a broad

arbitration clause and the parties failed to signal an intent to limit arbitrators' authority).  In

deciding to award attorneys' fees, the arbitration panel here relied on *PaineWebber*, quoting

extensively from that decision and noting that the CVC's dispute resolution clause "broadly

applied to 'any disputes or differences' arising under the contract, had no express limitation with

respect to attorney's fees and, even more pointedly, did not provide for New York law."  Award

at 30.  That decision was not made in manifest disregard of the law.

Finally, Cogent contends that even if the arbitrators had been empowered to consider the

request for fees, their ability to award fees was restricted by the American Rule against awarding

fees to a winning party in litigation, and no exception allowing fee awards in arbitration applies

in this case. *See* Cogent Br. 8.  Cogent argues that the clearly established law in arbitration cases

is that an award of attorneys' fees requires either (1) an express grant of authority to award fees

in an arbitration clause or agreement, (2) express authorization under a governing statute or

procedural rule, or (3) a finding of bad faith.  Cogent Decl., Ex. 8, at 51–52.  Cogent argues that

no exception was met and that the arbitrators therefore exceeded their authority in awarding fees,

even if the broad arbitration clause gave them the power to consider such a request.

However, the Award indicates that the panel found that Cogent had acted in bad faith.  In

its post-hearing memorandum of law submitted to the arbitration panel, NSU argued that Cogent

had acted in bad faith both in its dealings with NSU under the Charter, and in its conduct during

the arbitration. NSU Decl., Ex. 3, at 36. The panel appears to have accepted NSU's argument. It held that:

> Cogent breached the CVC by failing to supply cargoes as required. There was also the implied and expressed threat that no further cargoes would be supplied unless NSU would agree to new terms and rates for the balance of the contract period. The protracted proceedings, the unreasonably extensive discovery proceedings requiring the panel's rulings, the *force majeure* notice which was a non-issue created costs and fees which would not have arisen in the normal course of business.

Award at 31. Although less than a model of clarity, this paragraph, which provides the only explanation in the Award for granting fees to NSU, certainly provides a "colorable" justification for finding that Cogent acted in bad faith both during the course of the CVC and during arbitration, and for awarding attorneys' fees. *See Willemijn*, 103 F.3d at 13 (citation omitted).

Because Cogent has failed to show that the arbitrators' award of attorneys' fees to NSU was made in excess of authority or in manifest disregard of the law, there is no basis for vacating that portion of the Award.

### C. Whether the Arbitration Procedures Were Fundamentally Unfair

Courts typically do not review the procedures used by arbitrators. "There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 469 (1989). Nevertheless, arbitrators must comply with the requirements of due process: "Although [an arbitrator] is not required to hear all the evidence proffered by a party, an arbitrator must give each of the parties to a dispute an adequate opportunity to present its evidence and argument." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 107 (2d Cir. 2013) (quoting *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997)). Courts may vacate as

fundamentally unfair awards that violate these requirements. *See Global Gold Min., LLC v. Ayvazian*, No. 13-4759, 2015 WL 1881361, at *3 (2d Cir. Apr. 27, 2015) (summary order).

Cogent argues that the use of email in the course of the arbitration proceedings was fundamentally unfair because "submissions, by email at any time or day of the week allowed the party sending those emails to makes its case before the respondent even had an opportunity to reply." Cogent Br. 15–16. This argument is meritless. As NSU pointed out, using email for substantive communication is no different from filing briefs, which similarly allows the moving party to make its case first. NSU Reply Br. 10.

Cogent also claims that email communications "precipitated a decision by the arbitrators to refuse to take submissions from Cogent on that issue despite the fact that NSU United had already done so." Cogent Br. 16. But the email exchanges Cogent submitted as exhibits belie this claim. They show that Cogent and NSU were both given the opportunity to advocate before the arbitrators rendered their decision. *See* Cogent Decl. Exs. 4–5. Because Cogent has not identified any evidence indicating that it was denied an adequate opportunity to present its evidence or arguments at any point during the arbitration, procedural fairness does not provide a basis for the Court to vacate the Award.

## CONCLUSION

For the foregoing reasons, NSU's petition to confirm the arbitration award is granted, and Cogent's cross-motion to vacate the award is denied.[5] The Clerk of Court is directed to terminate all pending motions, and to close this case.

---

[5] In its Petition, NSU also requests that the Court "grant Petitioner its attorneys' fees and costs for pursuing this action." Petition ¶ 20. NSU has not pursued this application further in any of its briefs, including setting out the legal basis for such relief, nor has it provided the Court with an accounting of the fees or costs it incurred in this case. The Court accordingly declines to award such relief.

18

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: July 14, 2015
      New York, New York

**EXHIBIT E**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

NS UNITED KAIUN KAISHA, LTD.,

               Petitioner,

     -against-

COGENT FIBRE INC.,

               Respondent.

-----------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 7/16/201)

**15 CIVIL** 1784 (PAE)

**JUDGMENT**

Petitioner NS United Kaiun Kaisha, Ltd. ("NSU") having moved to confirm an arbitration award (the "Award") pursuant to 9 of the Federal Arbitration Act ("FAA" or "Act"), 9 U.S.C. § 9; Respondent Cogent Fibre Inc. ("Cogent") having opposed the petition, and cross-moved to vacate the Award under § 10 of the FAA, and the matter having been brought before the Honorable Paul A. Engelmayer, United States District Judge, and the Court, on July 14, 2015, having issued its Opinion and Order granting NSU's petition to confirm the arbitration award, denying Cogent's cross-motion to vacate the award, and directing the Clerk of Court to close this case, it is,

     **ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Opinion and Order dated July 14, 2015, NSU's petition to confirm the arbitration award is granted, and Cogent's cross-motion to vacate the award is denied; accordingly, the case is closed.

**Dated:** New York, New York
        July 16, 2015

                          **RUBY J. KRAJICK**

                           **Clerk of Court**

   **BY:**

                           **Deputy Clerk**

**THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON** _____